**[ORAL ARGUMENT NOT YET SCHEDULED]**

No. 25-5184

---

# IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

AMERICAN FOREIGN SERVICE ASSOCIATION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

---

On Appeal from the United States District Court for the District of Columbia

---

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY AND STAY PENDING APPEAL**

---

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

JOSHUA M. SALZMAN
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*

# TABLE OF CONTENTS

**Page**

GLOSSARY

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.    THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS ............... 2

    A.    The FSA Precludes District-Court Jurisdiction Over Plaintiff's Claims .................................................................. 2

    B.    Executive Order 14,251 Is Consistent With The Statute ...... 5

    C.    Plaintiff Cannot Demonstrate Irreparable Harm ................ 12

II.    THE EQUITABLE FACTORS FAVOR A STAY .......................................... 14

CONCLUSION ..................................................................................................... 15

CERTIFICATE OF COMPLIANCE

## GLOSSARY

| | |
|---|---|
| AFSA | American Foreign Service Association |
| Board | Foreign Service Labor Relations Board |
| FLRA | Federal Labor Relations Authority |
| FSA | Foreign Service Act of 1980 |
| FSLMRS | Federal Service Labor-Management Relations Statute |
| NTEU | National Treasury Employees Union |
| USAID | U.S. Agency for International Development |

# INTRODUCTION

Plaintiff American Foreign Service Association (AFSA) does not dispute that President Trump duly promulgated Executive Order 14,251, invoking a grant of discretionary authority under the Foreign Service Act of 1980 (FSA) to exclude certain agency subdivisions from that statute's labor-management-relations provisions. *See* 22 U.S.C. § 4103(b). AFSA insists that the district court nonetheless correctly enjoined the executive order as *ultra vires* on the theory that the President had ulterior motives when he determined that extending collective-bargaining rights to certain members of the Foreign Service is incompatible with national security. But this Court's precedents make clear that the district court lacked authority to second-guess the President's judgment in that manner. This fundamental error is compounded by the court's failures to appreciate that AFSA was required to press its claim before the Foreign Service Labor Relations Board (Board), that the executive order would survive judicial scrutiny (even were such scrutiny permissible), and that the balance of equities decisively favors the government.

This Court recently granted a stay pending appeal in a case brought by a similarly situated union plaintiff raising nearly identical issues. *See* Order, *National Treasury Emps. Union* (*NTEU*) *v. Trump*, No. 25-5157 (D.C. Cir. May 16, 2025) (per curiam) (*NTEU* Stay Order), *petition for reh'g filed* (May 23, 2025). AFSA provides no reason that this Court should reach a different outcome in this case. The district court's order should be stayed pending appeal.

## ARGUMENT

I. **THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS**

   A. **The FSA Precludes District-Court Jurisdiction Over Plaintiff's Claims**

The district court should not have even reviewed the case on the merits. AFSA has mechanisms to ask the Board to consider the executive order's validity and, thus, must proceed through the FSA's review scheme, which is "exclusive with respect to claims within its scope." *AFGE v. Trump*, 929 F.3d 748, 755 (D.C. Cir. 2019); *see* Mot. 12; *AFSA v. Baker*, 895 F.2d 1460, 1462 (D.C. Cir. 1990).

AFSA's contrary argument (Opp'n 12) relies on inapposite cases. In *U.S. Attorney's Office*, for example, the Federal Labor Relations Authority (FLRA) dismissed a union's claim against a U.S. Attorney's

2

Office after President Bush issued an executive order excluding such offices from the provisions of the Federal Service Labor-Management Relations Statute (FSLMRS).  57 F.L.R.A. 750 (2002).  But no party contested the validity of that executive order, so there was no jurisdictional dispute for the FLRA to resolve.  *Id.* at 750 & n.3.  Likewise, in the three other FLRA cases that AFSA cites, there is no indication that the petitioning unions disputed the validity of the executive orders that excluded the relevant agencies in those cases from the FSLMRS.  AFSA fails to show that the Board could not consider the validity of an exclusion determination if the issue were contested.

If the Board were to dismiss a claim against the State Department or the U.S. Agency for International Development (USAID) for lack of jurisdiction, that order would be a "final order of the Board" subject to judicial review.  22 U.S.C. § 4109(a).  AFSA could then challenge the dismissal—and the validity of the executive order—in this Court.

AFSA contends (Opp'n 13) that it would never get to the stage of the Board dismissing an unfair-labor-practice complaint, because the Board's General Counsel could decline to file such a complaint.  But AFSA fails to recognize that it can bring other types of claims before the

3

Board without the General Counsel's action—such as a petition to clarify the scope of the bargaining unit, *see* 22 C.F.R. § 1422.1(d). The Board's dismissal of such a petition would be a reviewable final order.

Plaintiff further errs in arguing (Opp'n 14-15) that its claims are collateral to the FSA's review provisions and outside the Board's expertise because the Board is not intended or authorized to second-guess the President's exclusion determination. As just noted, a challenge to the scope of a bargaining unit is precisely the type of claim that the Board regularly adjudicates. Furthermore, in *AFGE v. Trump*, this Court explained that a claim that executive orders violated the FSLMRS was "of the type that is regularly adjudicated through the FSLMRS's scheme" and "at the core of the FLRA's 'specialized expertise.'" 929 F.3d at 760. The same is true of the Board's adjudication of a claim that an executive order violates the FSA. And even if the Board were to refuse to review the validity of the executive order, this Court could address AFSA's claim on review of a dismissal order. *See Elgin v. Department of the Treasury*, 567 U.S. 1, 16-18 (2012) (holding that the Federal Circuit can review a constitutional challenge

4

on appeal from a decision of the Merit Systems Protection Board even if that Board refused to consider the issue itself).

## B. Executive Order 14,251 Is Consistent With The Statute

Even if the district court has jurisdiction to reach the merits, the government is likely to prevail.

**1.** AFSA ignores the heavy burden that it faces in establishing an *ultra vires* claim. As the government explained (Mot. 14-15), a plaintiff in an *ultra vires* action must show that the Executive Branch "plainly" acted in excess of its delegated powers and contrary to a specific prohibition. *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.). The challenged action must "go beyond mere legal or factual error and amount to a 'clear departure by the agency from its statutory mandate' or be 'blatantly lawless' agency action." *Federal Express Corp. v. U.S. Dep't of Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022) (alteration omitted).

AFSA cannot possibly satisfy that standard. The FSA vests in the President discretion to determine whether applying the statute to particular agencies is "consistent with national security requirements and considerations." 22 U.S.C. § 4103(b). As this Court has recognized,

5

the President is not even required to justify or explain his decision to invoke this discretionary authority. *AFGE v. Reagan*, 870 F.2d 723, 728 (D.C. Cir. 1989). Against that backdrop, AFSA can hardly show that it is "plain on the record" that the President exceeded his authority and that Executive Order 14,251 is "blatantly lawless." *Federal Express*, 39 F.4th at 764-765.

At bottom, the district court's decision rests on "an unwarranted assumption that the President was indifferent to the purposes and requirements of the [FSA], or acted deliberately in contravention of them." *AFGE*, 870 F.2d at 728.

**2.** The district court erred in declaring that AFSA had rebutted the presumption of regularity that attaches to the President's exclusion determination. Contrary to AFSA's assertion (Opp'n 16-18), the White House fact sheet accompanying the executive order only confirms that the order is consistent with § 4103(b). The fact sheet explains that unions have used statutory collective-bargaining and grievance provisions to interfere with agencies' ability to remove employees for poor performance or misconduct; change working conditions to meet national-security demands; eliminate waste, bloat, and insularity; and

6

optimize agency efficiency through restructuring. *See* Mot. 18-20. Rather than demonstrating animus, the fact sheet explains that such impediments to the effective and efficient operation of the government are inconsistent with national-security considerations in the context of the specific agencies designated in the executive order.

AFSA likewise errs in inferring (Opp'n 16, 25-26) an impermissible motive to punish certain unions from the fact that some agencies that perform national-security work as a primary function were not designated in the executive order. Rather than demonstrating retaliatory animus, the limited scope of the executive order demonstrates the President's deliberate consideration of which agencies must be exempted from the labor-management-relations statutes for national-security reasons. As the government explained, some unions have used statutory collective-bargaining requirements to obstruct the Executive Branch's efforts to streamline the workforce, implement cybersecurity practices, and dismiss poor performers—all of which can impede the government's national-security work. *See* Mot. 19. At agencies where unions have engaged in such obstructive tactics, collective bargaining is inconsistent with national-security

7

requirements; but where unions have acted cooperatively and bargained in good faith without impeding critical changes, collective bargaining may be consistent with those requirements.

 **3.** Even if the presumption of regularity were rebutted, AFSA has not shown that the executive order is "plainly" in excess of the President's delegated powers, *Nyunt*, 589 F.3d at 449.  AFSA's assertion (Opp'n 19) that the government bears the burden of establishing the legality of the executive order is flatly inconsistent with the *ultra vires* standard and this Court's holding in *AFGE v. Reagan* that the President need not "insert written findings into an exempting order," 870 F.2d at 727.

 AFSA thus errs in arguing that the executive order must be invalidated because the fact sheet fails to support the exclusion of certain subdivisions of the State Department and USAID.  The fact sheet, which on its face addresses the President's determinations under the FSLMRS rather than the FSA, notes that "trade policy is a national security tool," The White House, *Fact Sheet: President Donald J. Trump Exempts Agencies with National Security Missions from Federal Collective Bargaining Requirements* (Mar. 27, 2025),

8

https://perma.cc/Y7HR-4W3H.  But it does not suggest that this is the only national-security function performed by the State Department or USAID—and it plainly is not.  Rather, the fact sheet was simply providing one example of the national-security work that those agencies perform.  As the government has explained, the State Department and USAID perform extensive work that is intimately connected to the national security, including in matters related to international alliances, arms control, worldwide law enforcement, and promoting democratic reform.  *See* Mot. 22-24.  And this work is performed by subdivisions throughout the State Department and USAID.  In any event, if the President need not explain his determination in the executive order itself, neither must he do so in a White House fact sheet.

AFSA criticizes (Opp'n 22) government counsel for offering post hoc rationalizations for the executive order.  Such explanations may not support an agency action where the agency was required to explain its action, but here, it is established that the President need not set forth findings or explanations for his exempting order.  *AFGE*, 870 F.2d at

9

727-728. Accordingly, it should be unsurprising that the challenged order itself does not include the President's reasoning.

AFSA further errs in contending (Opp'n 23-25) that Congress left the Executive Branch sufficient flexibility such that the FSA's collective-bargaining provisions cannot interfere with national-security requirements. If that were true, there would have been no need for Congress to grant the President discretion to exclude agency subdivisions from the coverage of those provisions when not consistent with national-security requirements. Notwithstanding the FSA's management-rights provision, 22 U.S.C. § 4105(a), the statute gives unions extensive rights to bargain over the "procedures which management officials … will observe," *id.* § 4105(b)(2), and requires the government to meet with union officials to bargain over changes to conditions of employment and provide data to the union upon its request, *id.* § 4113(e). As explained, unions have utilized these procedures in a manner that impedes agency functions. *See supra* p. 7. Furthermore, although the FSA provides the President certain flexibilities "during emergencies," 22 U.S.C. § 4105(a)(7), Congress certainly recognized in enacting § 4103(b)—which permits the President

10

to exclude agency subdivisions from the labor-management-relations provisions of the FSA whenever necessary for national security—that the government cannot wait until a "precipitating national security event," Opp'n 16, to protect the national security.

AFSA also contends (Opp'n 21) that the executive order violates § 4103(b) because it ostensibly excludes "everyone covered by the [FSA]." As an initial matter, AFSA is incorrect because President Trump did not exclude subdivisions of the Department of Commerce or Department of Agriculture, for example, from the labor-management-relations provisions of the FSA; members of the Foreign Service employed by those agencies retain collective-bargaining rights. In any event, the FSA does not limit the number of agency subdivisions that the President may exclude, nor does it prevent the President from designating each subdivision that employs members of the Foreign Service. Rather the statute permits the President to "exclude *any* subdivision … from coverage" if he makes the requisite determination. 22 U.S.C. § 4103(b) (emphasis added). The authority to exclude "any" subdivision must be read expansively, to include as few or as many subdivisions as the President determines necessary. *Cf. United States*

11

*v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'").

### C. Plaintiff Cannot Demonstrate Irreparable Harm

AFSA also did not demonstrate that it would suffer irreparable harm absent a preliminary injunction. AFSA's arguments to the contrary are inconsistent with this Court's recent stay order in *NTEU*, which makes clear that exclusion from a labor-management-relations statute does not by itself constitute irreparable harm.

The government explained that AFSA's loss of its right to negotiate over changes to employment conditions is not an irreparable injury. Mot. 28. If plaintiff prevails and the executive order is invalidated, the Board can order the State Department to negotiate any matter and impose a retroactive remedy—notwithstanding State's termination as a technical matter of its Framework Agreement with AFSA. *See, e.g.*, 22 C.F.R. § 1423.29(b)(2); *cf. Department of the Navy*, 36 F.L.R.A. 509, 511 (1990) ("Where an agency violates the [FSLMRS] by changing a negotiable condition of employment without fulfilling its obligation to bargain on that change, the Statute requires the imposition of a status quo ante remedy, in the absence of special

12

circumstances."). Such a remedy could extend to the procedures to be observed during or after a reduction in force.

AFSA posits (Opp'n 8) a "mutually reinforcing cycle" in which its lack of bargaining power will diminish employees' interest in the union. But courts have held that a union's concern "that its members will lose confidence in the union" absent immediate relief "is too speculative to justify a preliminary injunction." *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005); *see also Henderson ex rel. Nat'l Labor Relations Bd. v. Bluefield Hosp. Co.*, 902 F.3d 432, 440 (4th Cir. 2018) (rejecting the "theory that interim relief is necessary to prevent the Union from losing employee support").

This Court in *NTEU* rejected the argument that the loss of union dues is irreparable injury, explaining that the union can recover those dues if it ultimately prevails in litigation. *NTEU* Stay Order 2-3. Furthermore, as in *NTEU*, "it is speculative that [AFSA] will suffer a significant financial injury in the interim" because it can continue to collect dues directly from its members. *Id.* at 3. Indeed, AFSA already has an online portal where members can pay their dues. *See* Dkt. 28, at 7.

13

## II. THE EQUITABLE FACTORS FAVOR A STAY

While AFSA would suffer no harm from a stay, the preliminary injunction causes the government irreparable harm by "impeding [the President's] national-security prerogatives, which were explicitly recognized by Congress," *NTEU* Stay Order 3. AFSA's arguments to the contrary are inconsistent with this Court's order in *NTEU*, and AFSA does not even attempt to distinguish that case.

AFSA asks this Court to second-guess the President's determination that excluding subdivisions of the State Department and USAID from the labor-management-relations provisions of the FSA is necessary to protect national security. But this Court is neither equipped nor authorized to intrude on the President's constitutional responsibilities in the national-security realm. *See Trump v. Hawaii*, 585 U.S. 667, 704 (2018).

## CONCLUSION

The Court should grant an immediate administrative stay and a stay pending appeal.

>                             Respectfully submitted,
>
>                             YAAKOV M. ROTH
>                               *Acting Assistant Attorney*
>                                 *General*
>
>                             */s/ Joshua M. Salzman*
>                             JOSHUA M. SALZMAN
>                             JOSHUA M. KOPPEL
>                               *Attorneys, Appellate Staff*
>                               *Civil Division, Room 7212*
>                               *U.S. Department of Justice*
>                               *950 Pennsylvania Avenue NW*
>                               *Washington, DC 20530*
>                               *(202) 514-4820*
>                               *joshua.m.koppel@usdoj.gov*

June 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and that it complies with the type-volume limitation of Rule 27(d)(2)(C) because it contains 2,575 words, according to Microsoft Word.

                                              */s/ Joshua M. Salzman*
                                              Joshua M. Salzman