[ORAL ARGUMENT NOT YET SCHEDULED]
No. 25-5184

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

AMERICAN FOREIGN SERVICE ASSOCIATION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

_____

On appeal from the United States District Court
for the District of Columbia

_____

APPELLEE'S PETITION FOR REHEARING EN BANC
OF PANEL DECISION GRANTING STAY PENDING APPEAL

_____

Richard J. Hirn
Law Office of Richard J. Hirn
5335 Wisconsin Ave., NW, Suite 400
Washington, D.C. 20015
(202) 274-1812

Keith R. Bolek
April H. Pullium
O'Donoghue & O'Donoghue LLP
5301 Wisconsin Ave., NW, Suite 800
Washington, D.C. 20015
(202) 362-0041

Sharon L. Papp
General Counsel
Raeka Safai
Deputy General Counsel
American Foreign
      Service Association
2101 E Street, NW
Washington, D.C. 20037

## TABLE OF CONTENTS

GLOSSARY .................................................................................................. vii

INTRODUCTION AND RULE 40(B)(2) STATEMENT ........................... 1

ARGUMENT ................................................................................................ 5

I.    The Panel's determination that the Government would likely
      succeed on the merits of its appeal was erroneous and conflicted
      with numerous decisions of this Court. ................................................. 5

      A.    AFSA has a non-statutory right to a review of the executive
            order. ............................................................................................ 5

      B.    In determining that the Government was likely to succeed
            on appeal, the Panel ignored the District Court's finding that
            the presumption of regularity had been rebutted and failed
            to address the actual statutory language at issue. ............. 11

II.   The Panel's determination that the President suffered irreparable
      injury that outweighed AFSA's loss of collective bargaining rights
      was unsupported. ................................................................................. 16

CONCLUSION ........................................................................................ 20

CERTIFICATE OF COMPLIANCE ...................................................... 22

# TABLE OF AUTHORITIES

## Cases

*AFSA v. Trump*,
No. 25-1020, 2025 WL 1387331,
(D.D.C. May 14, 2025) ................................................. 3, 5, 10, 13, 15

*AFSA v. Trump*,
No. 25-5184, 2025 WL 1742853 (D.C. Cir. June 20, 2025) ..... 3, 11, 16

*Aid Assn. for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166 (D.C. Cir. 2003) ............................................ 7

*American Federation of Government Employees v. Reagan*,
870 F.2d 723 (D.C. Cir. 1989) ..................................... 4, 6, 12

*American Forest Resource Council v. United States*,
77 F.4th 787, 796 (D.C. Cir. 2023), .......................... 4, 9, 10

*Chamber of Commerce v. Reich*,
74 F.3d 1322, 1327 (D.C. Cir. 1996) .......................... 3, 4, 6, 7, 9, 10

*Chicago & Southern Air Lines v. Waterman Steamship Corp.*,
333 U.S. 103 (1948) .............................................................. 9

*Comm. for Nuclear Resp., Inc. v. Seaborg*,
463 F.2d 788, 790 (D.C. Cir. 1971). ..................................... 6

*Ctr. for Biological Diversity v. Mattis*,
868 F.3d 803, 827 (9th Cir. 2017). ..................................... 11

*Cuomo v. Clearing House Assn.*,
557 U.S. 519, 530 (2009) ................................................. 15

*Dalton v. Spector*,
511 U.S. 462 (1994) .......................................................... 8, 9

iii

*DCH Reg'l Med. Ctr. v. Azar,*
  925 F.3d 503 (D.C. Cir. 2019) ............................................................. 8

*Hartman v. Moore,*
  547 U.S. 250 (2006). ......................................................................... 12

*Int'l Refugee Assistance Project v. Trump,*
  857 F.3d 554 (4th Cir. 2017), ............................................................ 16

*J.G.G. v. Trump,*
  No. 25-5067, 2025 WL 914682 (D.C. Cir. Mar. 26, 2025) ................. 17

*Mountain States Legal Found. v. Bush,*
  306 F.3d 1132 (D.C. Cir. 2002). .......................................................... 8

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.,*
  26 F.4th 960, 971 (D.C. Cir. 2022). .................................................. 7, 8

*Newsom v. Trump,*
  No. 25-3727, 2025 WL 1712930 (9th Cir. June 19, 2025) ................... 9

*Nken v. Holder,*
  556 U.S. 418 (2009) ........................................................................... 17

*Nyunt v. Broad. Bd. of Governors,*
  589 F.3d 445, 449 (D.C. Cir. 2009) ..................................................... 8

*Pac. Gas & Elec. Co. v FERC,*
  113 F.4th 943 (D.C. Cir. 2024) .......................................................... 15

*Palantir USG, Inc. v. United States,*
  904 F.3d 980 (Fed. Cir. 2018) ........................................................... 12

*Sinclair Wyoming Ref. Co. LLC v. Env't Prot. Agency,*
  114 F.4th 693 (D.C. Cir. 2024) .......................................................... 14

*Spokane & Inland Empire R.R. Co. v. United States,*
  241 U.S. 344 (1916) ........................................................................... 15

iv

*United States v. Amer. Tel. & Tel. Co.*,
    567 F.2d 121 (D.C. Cir. 1977) ............................................................ 12

*United States v. Brundney*,
    463 F.2d 376 (9th Cir. 1972) ............................................................. 13

*Wisconsin Gas Co. v. FERC*,
    758 F.2d 669 (D.C. Cir. 1985) ........................................................... 17

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) .......................................................................... 10

## Statutes

22 U.S.C. § 4101. ..................................................................................... 14

22 U.S.C. § 4103(b) .................................................. 2, 4, 5, 11, 12, 13, 18

22 U.S.C. § 4105(a) ................................................................................. 18

22 U.S.C. § 4107(b). ................................................................................ 19

22 U.S.C. §§ 4101(1), (3). ....................................................................... 14

## Executive Orders

Executive Order No. 11,636, 36 Fed. Reg. 24,901 (Dec. 24, 1971) ........... 2

Executive Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025) .......... 1

## Administrative Decisions

*SPORT and Dep't of Air Force, Edwards AFB*, 68 F.L.R.A. 9, 10-11
    (2014) ................................................................................................. 19

## Other Authorities

J. Hudson, *State Department is firing more 1,300 employees in downsizing plan*, WASH. POST (July 11, 2025), https://www.washingtonpost.com/politics/2025/07/10/state-department-layoffs-federal-employees/ ............................................ 19

White House Fact Sheet, https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements/ (last visited July 11, 2025).............. 3

# GLOSSARY

AFGE………………………..American Federation of Government Employees

AFSA...................................................American Foreign Service Association

FLRA...................................................... Federal Labor Relations Authority

OPM .......................................................... Office of Personnel Management

USAID......................................U.S. Agency for International Development

## INTRODUCTION AND RULE 40(B)(2) STATEMENT

This Court should grant rehearing en banc of the Stay Pending Appeal issued by a Panel of this Court because the order conflicts with multiple decisions of this Court and the full Court's consideration is therefore necessary to secure or maintain uniformity of the Court's decisions. Rehearing en banc should also be granted because the proceeding involves numerous questions of exceptional importance involving not only whether the President's revocation of the collective bargaining rights of over 17,000 members of the Foreign Service exceeded the powers delegated to him by the Foreign Service Act, but (in the Panel's own words) "whether ultra vires review is available at all" when one of the defendants is the President.

This case arose when the President issued Executive Order No. 14,251, 90 Fed. Reg. 14,553 (Mar. 27, 2025), which excluded all the members of the Foreign Service employed by the Department of State and the U.S. Agency for International Development from coverage of the Foreign Service Labor Management Relations Statute (Subchapter X of the Foreign Service Act of 1981), which grants collective bargaining rights to the Foreign Service. This labor statute provides narrow

grounds upon which the President may exclude some Foreign Service employees from coverage:

> **Exclusion of subdivisions.** The President may by Executive order exclude any subdivision of the Department from coverage under this subchapter if the President determines that—
>
> **(1)** the subdivision has as a primary function intelligence, counterintelligence, investigative, or national security work, and
>
> **(2)** the provisions of this subchapter cannot be applied to that subdivision in a manner consistent with national security requirements and considerations.

22 U.S.C. § 4103(b). The American Foreign Service Association ("AFSA"), which has served as the collective bargaining representative of the members of the Foreign Service employed by the State Department and USAID since President Nixon issued Executive Order No. 11,636, 36 Fed. Reg. 24,901 (Dec. 24, 1971), sued challenging President Trump's Executive Order, alleging that it exceeded the authority delegated to him by Congress in Section 4103, and was issued in retaliation for AFSA's exercise of its First Amendment rights. The District Court issued a preliminary injunction based on AFSA's statutory claim, while reserving a ruling on its constitutional claim. The District Court found that AFSA presented "clear evidence" that the

Executive Order was issued in retaliation for AFSA and other unions'
opposition to the policies of the new Administration based upon its
"unprecedented scope that seemingly conflicts with Congress's intent –
coupled with the contemporaneous statements contained in the White
House Fact Sheet" that accompanied the executive order[1] claiming that
"certain Federal unions have declared war on President Trump's
agenda" and that "he will not tolerate mass obstruction." *AFSA v.
Trump*, No. 25-1020, 2025 WL 1387331, *3, *9. (D.D.C. May 14, 2025).
Having determined that AFSA "successfully rebutted the presumption
of regularity" that would normally be accorded to the President's
actions, the District Court concluded that the President either "applied
an overly broad" interpretation of or disregarded the statutory criteria
that would permit an exemption. *Id.* at *8-*13.

The Government obtained a stay of the preliminary injunction from
a Panel of this Court on June 20, 2025 in *AFSA v. Trump*, No. 25-5184,
2025 WL 1742853. The Panel's Order conflicts with this Court's decision
in *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327 (D.C. Cir. 1996)

---

[1] https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-
donald-j-trump-exempts-agencies-with-national-security-missions-from-
federal-collective-bargaining-requirements/ (last visited July 11, 2025).

("*Chamber of Commerce*"), which recognized that plaintiffs "are entitled to bring a non-statutory cause of action questioning the legality of [an] Executive Order." It also conflicts with *American Forest Resource Council v. United States*, 77 F.4th 787, 796 (D.C. Cir. 2023), in which this Court reiterated that a "claim alleging that the President acted in excess of his statutory authority is judicially reviewable even absent an applicable statutory review provision."

The Panel's decision also conflicts with *American Federation of Government Employees v. Reagan*, 870 F.2d 723 (D.C. Cir. 1989) ("*AFGE*"), in which this Court wrote that an executive order excluding agencies or their subdivisions from collective bargaining on national security grounds under a similar provision of the Federal Service Labor Management Relations Statute is reviewable, although "the challenged order is entitled to a *rebuttable* presumption of regularity." *Id.* at 724 (emphasis supplied).

Rehearing en banc should be granted because this case also raises several questions of exceptional importance. First, although Section 4103(b) authorizes the President to exclude a specific *subdivision* of the State Department or USAID from coverage of the Foreign Service Labor

Management Relations Statute if it meets two exacting criteria, may he use that authority to essentially rescind the labor statute by excluding the entire Department of State or USAID from coverage *pro forma*? Second, may the President use—or in this case misuse—his authority under Section 4103(b) to rescind the collective bargaining rights of the Foreign Service when the presumption of regularity normally accorded to an official's actions has been rebutted by "clear evidence" of a "retaliatory motive for the Executive Order" and when the President "disregard[ed] or appli[ed] an overly broad interpretation" of the specific criteria in Section 4103(b) that must be met before exclusion? *AFSA*, 2025 WL 1387331 at *8–*9. Finally, the Panel's decision also raises the fundamental question of whether a plaintiff can ever obtain a preliminary injunction in a case ostensibly involving national security?

## ARGUMENT

I. **The Panel's determination that the Government would likely succeed on the merits of its appeal was erroneous and conflicted with numerous decisions of this Court.**

A. **AFSA has a non-statutory right to a review of the executive order.**

The Panel was mistaken when it wrote that "it is unclear whether ultra vires review" of Executive Order 14,251 "is available at all." *Id.* at

5

*2. AFSA is "entitled to bring a non-statutory cause of action questioning the legality of the Executive Order." *Chamber of Com.*, 74 F.3d at 1327 (D.C. Cir. 1996).

> An essential ingredient of our rule of law is the authority of the courts to determine whether an executive official or agency has complied with the Constitution and with the mandates of Congress which define and limit the authority of the executive. Any claim to executive absolutism cannot override the duty of the court to assure that an official has not exceeded his charter or flouted the legislative will.

*Comm. for Nuclear Resp., Inc. v. Seaborg*, 463 F.2d 788, 790 (D.C. Cir. 1971).

An executive order excluding agencies or their subdivisions from collective bargaining on national security grounds is reviewable in this Circuit, although "the challenged order is entitled to a rebuttable presumption of regularity." *AFGE*, 870 F.2d at 724 (D.C. Cir. 1989). *AFGE* referred to "other cases in which courts have invalidated executive action that did not satisfy statutory demands" as "unexceptional holdings." *Id.* at 726 & n. 26.

Ultra vires review is not as limited as the Panel believes. Judicial review of the President's conduct is not limited to "actions that run afoul of the Constitution or which contravene direct statutory

prohibitions," but can encompass other "statutory limitations on
governmental authority." *Chamber of Com.*, 74 F.3d at 1332. "In sum,
we think it untenable to conclude that there are no judicially
enforceable limitations on presidential actions, besides actions that run
afoul of the Constitution or which contravene direct statutory
prohibitions . . . ." *Id.* "It does not matter whether the unlawful action
arises because the disputed [action] defies the plain language of the
statute or because the [President's] construction is utterly unreasonable
and thus impermissible." *Aid Assn. for Lutherans v. U.S. Postal Serv.*,
321 F.3d 1166, 1174 (D.C. Cir. 2003).

The Government's and the Panel's "characterization of what
constitutes a 'clear and mandatory' statutory provision that is
reviewable for *ultra vires* acts is patently at odds with our governing
precedent." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.,* 26
F.4th 960, 971 (D.C. Cir. 2022). "So long as a statutory provision plainly
delineates the outer limits of agency authority and Congress has not
expressly precluded judicial review, the provision may be susceptible to
review for ultra vires acts that clearly violate its terms." *Id.* Section
4103(b) contains specific limitations on the President's authority to

exclude members of the Foreign Service from coverage of the labor statute and thus "delineates the outer limits" of that authority. "In contrast" this Court has "held that vague statutory provisions, such as one that requires an agency to use 'appropriate data' to calculate a payment amount, are not sufficiently clear and mandatory to warrant non-APA review." *Id.* at 971-72, citing *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 509-10 (D.C. Cir. 2019); *see also Nyunt v. Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (holding that a statutory provision requiring an agency to hire "suitably qualified" U.S. citizens was not subject to ultra vires review). "Unlike the statutory requirements in this case, those ambiguous provisions lack discernible standards by which a court can identify a limit to agency authority." *Nat'l Ass'n of Postal Supervisors,* 26 F.4th at 972. "A somewhat different case is presented, however, where the authorizing statute or another statute places discernible limits on the President's discretion." *Mountain States Legal Found. v. Bush*, 306 F.3d 1132, 1136 (D.C. Cir. 2002).

And because the labor statute contains specific criteria that limits the President's discretion, the Panel's reliance on *Dalton v. Spector*, 511

U.S. 462, (1994) and *Chicago & Southern Air Lines v. Waterman Steamship Corp.*, 333 U.S. 103 (1948), is misplaced. "*Dalton's* holding merely stands for the proposition that when a statute entrusts a discrete specific decision to the President and *contains no limitations on the President's exercise of that authority*, judicial review of an abuse of discretion claim is not available." *Chamber of Com.*, 74 F.3d at 1331 (emphasis added); *accord, Am. Forest Res. Council*, 77 F.4th at 797 (D.C. Cir. 2023). The Ninth Circuit also recently rejected the expansive reading of *Dalton* embraced by the Panel in this case, noting that the act in question in *Dalton* gave the President "unfettered discretion" whether to accept and implement the recommendations of the Base Closing Commission. *Newsom v. Trump*, No. 25-3727, 2025 WL 1712930, at *7 (9th Cir. June 19, 2025) (finding that the President acted within his delegated statutory authority to mobilize the National Guard). In *Chamber of Commerce*, this Court also rejected the applicability of *Waterman,* noting that judicial review was denied in that case on the grounds that it "embod[ied] Presidential discretion as to political matters." 74 F.3d at 1339 n.5.

9

The Panel also mistakenly found that another "hurdle" facing AFSA "is that the President is not an agency" and generally cannot be enjoined. *AFSA*, No. 25-1020, 2025 WL 1387331, at \*2. If *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) did not clearly reject that proposition, this Court in *Chamber of Commerce* surely did:

> That the "executive's" action here is essentially that of the President does not insulate the entire executive branch from judicial review. We think it is now well established that "[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." *Franklin,* 505 U.S. at 815, 112 S. Ct. at 2790 (Scalia, J., concurring in part and concurring in the judgment). Even if the Secretary were acting at the behest of the President, this "does not leave the courts without power to review the legality [of the action], for courts have power to compel subordinate executive officials to disobey illegal Presidential commands." *Soucie v. David*, 448 F.2d 1067, 1072 n.12 (D.C. Cir. 1971).

74 F.3d at 1328. AFSA also named the OPM Director and the Secretary of State as defendants in this action, and it was those officials whom the District Court enjoined.

In summary, "Congress can and often does cabin the discretion it grants to the President and it remains the responsibility of the judiciary to ensure that the President act within those limits." *Am. Forest Resource Council*, 77 F.4th at 797.

10

**B.**    **In determining that the Government was likely to succeed on appeal, the Panel ignored the District Court's finding that the presumption of regularity had been rebutted and failed to address the actual statutory language at issue.**

The Panel was excessively deferential to the President and did not even address the multi-prong statutory criteria that must be met before the President can exclude members of the Foreign Service from coverage of the labor statute.  More was required:

> When confronting a statutory question touching on subjects of national security and foreign affairs, a court does not adequately discharge its duty by pointing to the broad authority of the President and Congress and vacating the field without considered analysis.

*Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 827 (9th Cir. 2017). The Panel erroneously stated that the President was "exercising core Article II responsibilities" when he issued Exec. Order No. 14,251. *AFSA*, 2025 WL 1742853 at *3. Instead, the President was exercising a function delegated to him by Congress in the exercise of its Article I authority. In fact, in its introductory sentence the President cites Section 4103(b), rather than the Constitution, as his authority for issuing the executive order. Further, "the Constitution is largely silent on the question of allocation of powers associated with foreign affairs

11

and national security." *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 128 (D.C. Cir. 1977).

The Panel's reluctance to engage in a "searching inquiry" into whether the President acted consistent with Section 4103(b) is contrary to this Court's holding in *AFGE v. Reagan* that the presumption of regularity accorded to the President when he exercises the corresponding provision in the Federal Service Labor Management Relations Statute is rebuttable. 870 F.2d at 723. In fact, the Panel did not even mention (no less reject), the District Court's conclusion that this presumption has been rebutted in this case because of the President's animus and open hostility to the Federal employee unions whose collective bargaining rights he rescinded under the guise of national security. The President's "disclosure of his retaliatory thinking on his part" in the Fact Sheet that accompanied the Executive Order "would be of great significance in addressing the presumption." *Hartman v. Moore*, 547 U.S. 250, 264 (2006). And once this presumption is rebutted, the burden falls on the President to demonstrate that he acted consistent with the statute. *C.f. Palantir USG, Inc. v. United*

*States*, 904 F.3d 980, 995 (Fed. Cir. 2018); *United States v. Brundney*, 463 F.2d 376, 377-78 (9th Cir. 1972).

Merely observing that the work of the State Department is vital to our national security, as did the Panel, is insufficient to conclude that the President acted within the scope of his delegated and limited authority. Congress obviously knew that when it enacted the Foreign Service Act and codified the right of the Foreign Service to collectively bargain. As the District Court observed:

> Congress could not have been clearer in passing the Statute that it intended for the protections of the Statute to extend broadly to the covered departments and agencies in the foreign service. It therefore is plainly unreasonable to conclude that the exclusion in Section 4103(b) can be satisfied merely by pointing to the general national security and foreign policy "character" of the departments and agencies that Congress included in the Statute. To do so would essentially render Section 4103(b) meaningless since an agency subdivision necessarily would satisfy the provision by nature of their inclusion in the Statute.

*AFSA*, 2025 WL 1387331, *13.

Section 4103(b) cannot be interpreted as permitting the exclusion of the ***entirety*** of State or USAID because it defies both the plain text and Congressional findings that collective bargaining by members of the Foreign Service "safeguards the public interest, contributes to the

13

effective conduct of public business and facilitates and encourages the amicable settlement of disputes" and that "the unique conditions of Foreign Service employment requires a distinct framework for the development and implementation of modern, constructive, and cooperative relationships between management officials and organizations representing members of the Service." 22 U.S.C. §§ 4101(1), (3). The complete termination of AFSA's representation of Foreign Service members within State and USAID cannot be reconciled with Congress's finding that "labor organizations and collective bargaining in the Service are in the public interest and are consistent with the requirement of an effective and efficient Government." 22 U.S.C. § 4101. Congress would never have enacted this labor statute had it believed that, as a general rule, collective bargaining by Foreign Service members is inconsistent "with national security requirements and considerations."

As a matter of statutory construction, the authority to exclude particular subdivisions cannot be read to permit the exclusion of everyone covered by the statute because "[a] statutory exemption cannot swallow the rule." *Sinclair Wyoming Ref. Co. LLC v. Env't Prot.*

*Agency*, 114 F.4th 693, 711 (D.C. Cir. 2024); *accord Cuomo v. Clearing House Assn.,* 557 U.S. 519, 530 (2009); *Pac. Gas & Elec. Co. v FERC*, 113 F.4th 943, 949 (D.C. Cir. 2024). Section 3 of the Executive Order is "in plain disregard of the elementary rule requiring that exceptions from a general policy which a law embodies should be strictly construed; that is, should be so interpreted as not to destroy the remedial processes intended to be accomplished by the enactment." *Spokane & Inland Empire R.R. Co. v. United States*, 241 U.S. 344, 350 (1916).

The underlying question is whether the primary function of *each* of the subdivisions of the State Department and USAID that were excluded is national security *and* whether collective bargaining by the employees in each of those subdivisions is "consistent with national security requirements and considerations," and, whether the President is entitled to a "presumption of regularity" in making those determinations. *AFSA*, 2025 WL 1387331 at *8. The Panel's decision failed to address any of this. Instead, it granted the stay based on a simplistic—and irrelevant—syllogism divorced from the language of the statute:

> The Foreign Service is the workforce through which the
> United States conducts its foreign affairs. And foreign affairs

15

are critical to national security. So the Government is likely correct that the Executive Order is consistent with the Foreign Service Act's delegation of national-security determinations to the President.

*AFSA*, 2025 WL 1742853 at *2.

II. **The Panel's determination that the President suffered irreparable injury that outweighed AFSA's loss of collective bargaining rights was unsupported.**

The Panel essentially held that the mere invocation of national security by the Government—without the identification of any particular harms—will outweigh whatever other interests are at stake. Taken to its logical conclusion, no preliminary injunction could then ever issue in a suit that potentially implicates national security in some way. "We are . . . unmoved by the Government's rote invocation of harm to 'national security interests' as the silver bullet that defeats all other asserted injuries. . . National security may be the most compelling of government interests, but this does not mean it will always tip the balance of the equities in favor of the government." *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 603 (4th Cir. 2017), *as amended* (May 31, 2017), *as amended* (June 15, 2017), *vacated and remanded sub nom. Trump v. Int'l Refugee Assistance*, 583 U.S. 912 (2017).

The claimed injury is totally nonspecific, prospective, and theoretical. But to obtain a stay pending appeal, "the injury must be both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). As this Court has observed:

> Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur. The movant must provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future.

*Id.* (emphasis in original). "[S]imply showing some possibility of irreparable injury" is not sufficient to obtain a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation and citation omitted). "Equity will not act 'against something merely feared as liable to occur at some indefinite time.'" *J.G.G. v. Trump,* No. 25-5067, 2025 WL 914682, *11 (D.C. Cir. Mar. 26, 2025) (Henderson, C.J., concurring), *quoting Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931). The claimed harm also assumes that the Government is correct on the merits – and the ostensible irreparable injury evaporates if the Court agrees with the District Court that it is AFSA who is likely to succeed on the merits.

17

In its application for a stay pending appeal, the Government claimed that "[t]he dictates of national security may, at any time, require changes in working conditions or employee status to be accomplished without hesitation, prior notice, or an opportunity to bargain." No. 25-5184, Doc. #2117275, at 25 (May 23, 2025). This argument is, in fact, the President's entire rationale for why collective bargaining is ostensibly not "consistent with national security requirements and considerations" within the meaning of Section 4103(b)(2). It also represents a fundamental misunderstanding or misrepresentation of the bargaining requirements of the Foreign Service labor statute, which has an expansive management rights clause that protects agency prerogatives and precludes bargaining over a host of issues, not the least of which includes the right "to determine the mission, budget, organization, number of employees, and internal security practices of the Department," to "assign work," and, importantly, "to take whatever actions may be necessary to carry out the mission of the Department during emergencies." 22 U.S.C. § 4105(a). As a result, although unions may bargain only over the "procedures" that the agency will use in exercising its management

18

rights and over "appropriate arrangements for employees adversely
affected by the exercise" of those management rights (such as the
ongoing reduction-in-force at the State Department, *see* J. Hudson,
*State Department is firing more 1,300 employees in downsizing plan*,
WASH. POST (July 11, 2025),
https://www.washingtonpost.com/politics/2025/07/10/state-department-
layoffs-federal-employees/), they cannot bargain over the substance of
the decision itself. *Second*, an agency need not complete bargaining
before changing conditions of employment when immediate
implementation is "consistent with the necessary functioning of the
agency, such that a delay in implementation would have impeded the
agency's ability to effectively and efficiently carry out its mission."
*SPORT and Dep't of Air Force, Edwards AFB*, 68 F.L.R.A. 9, 10-11
(2014), *recon. denied*, 68 F.L.R.A. 107 (2014) (agency properly
furloughed employees without completing implementation bargaining).[2]

---

[2] The Foreign Service Labor Relations Board must follow FLRA
precedent unless it determines special circumstances require otherwise.
22 U.S.C. § 4107(b).

Through ten presidencies (including the first Trump administration), seventeen Secretaries of State and twenty-one Administrators and acting Administrators of USAID have recognized and bargained with AFSA. This bargaining occurred during the Viet Nam War, the Cold War, and the fall of the Soviet Union, 9/11 and the War on Terror, as well as during the war in Afghanistan, the longest war the United States has ever fought. Nothing has changed, other than America is now at peace. It is absurd to surmise that the nation's security will be jeopardized if the State Department and USAID are required to continue to collectively bargain with AFSA pendent lite.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellee American Foreign Service Association respectfully requests that the Court vacate the stay issued by the motions panel.

DATED: July 14, 2025                    Respectfully submitted,

By:     */s/ Richard J. Hirn*_____
        Richard J. Hirn
        5335 Wisconsin Ave., NW, Suite 440
        Washington, D.C. 20015
        (202) 274-1812
        richard@hirnlaw.com

        */s/ April H. Pullium*_____
        Keith R. Bolek
        April H. Pullium
        O'Donoghue & O'Donoghue LLP
        5301 Wisconsin Avenue, Suite 800
        Washington, D.C. 20015
        (202) 362-0041
        kbolek@odonoghuelaw.com
        apullium@odonoghuelaw.com

        */s/ Sharon L. Papp*_____
        Sharon L. Papp
        General Counsel
        Raeka Safai*
        Deputy General Counsel
        American Foreign Svc. Association
        2101 E Street, NW
        Washington, DC 20037
        (202) 338-4045
        papp@afsa.org
        safai@afsa.org

        *Counsel for Plaintiff*
        *American Foreign Svc. Association*

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 40(d)(3) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and D.C. Cir. R. 32(e)(1), this document contains 3,891 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in 14-point Century, a proportionally spaced typeface, using Microsoft Word.

*/s/ April H. Pullium*

*Counsel for Plaintiff-Appellee AFSA*

Dated: July 14, 2025

22