**[ORAL ARGUMENT HELD ON DECEMBER 15, 2025]**

**Nos. 25-5157, 25-5184, 25-5303**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

NATIONAL TREASURY EMPLOYEES UNION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

AMERICAN FOREIGN SERVICE ASSOCIATION,

Plaintiff-Appellee,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

FEDERAL EDUCATION ASSOCIATION, et al.,

Plaintiffs-Appellees,

v.

DONALD J. TRUMP, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Columbia

## SUPPLEMENTAL BRIEF FOR APPELLANTS

BRETT A. SHUMATE
  *Assistant Attorney General*

MELISSA N. PATTERSON
WEILI J. SHAW
JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

GLOSSARY ...................................................................................................iv

INTRODUCTION AND SUMMARY ...................................................................1

ARGUMENT .................................................................................................2

I. SECTIONS 7111(b) AND 4111(b) PROVIDE ADDITIONAL AVENUES FOR JUDICIAL REVIEW OF THE EXECUTIVE ORDER ...........................2

    A. Plaintiffs Can Raise Their Challenges To The Executive Order Through A Petition For Clarification ..........2

    B. A Clarification Petition Challenging The Validity Of A Presidential Exclusion Order Would Be Subject To Administrative And Judicial Review ......................................9

II. *AXON* AND *LOY* CONFIRM THAT PLAINTIFFS' CLAIMS BELONG WITHIN THE EXCLUSIVE FSLMRS REVIEW SCHEME .......................13

CONCLUSION .............................................................................................20

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*American Fed'n of Gov't Emps. v. Loy,*
  367 F.3d 932 (D.C. Cir. 2004) ............................. 1, 5, 10, 12, 16, 17, 19

*Association of Civilian Technicians v. FLRA,*
  283 F.3d 339 (D.C. Cir. 2002) ................................................. 17

*Axon Enter., Inc. v. FTC,*
  598 U.S. 175 (2023) ....................................... 1, 13, 14, 15, 18

*Department of the Navy,*
  6 F.L.R.A. 498 (1981) ................................................. 4, 7

*Drug Enf't Admin.,*
  4 F.L.R.A. 52 (1980) ................................................. 5

*Eisinger v. FLRA,*
  218 F.3d 1097 (9th Cir. 2000) ................................... 8, 10, 11

*Grosdidier v. Chairman, Broad. Bd. of Governors,*
  560 F.3d 495 (D.C. Cir. 2009) ................................................. 18

*Thunder Basin Coal Co. v. Reich,*
  510 U.S. 200 (1994) ................................................. 14, 18

*U.S. Dep't of the Treasury,*
  3 F.L.R.A. 30 (1980) ................................................. 5

*United States v. Fausto,*
  484 U.S. 439 (1988) ................................................. 17

**Statutes:**

5 U.S.C. § 7103(b)(1) ................................................. 1

5 U.S.C. § 7111(b) ................................................. 9

5 U.S.C. § 7111(b)(2) ................................................. 2

5 U.S.C. § 7112(a) ......................................................................... 6

5 U.S.C. § 7112(b)(2) ..................................................................... 1

5 U.S.C. § 7123(a) ....................................................................... 10

5 U.S.C. § 7123(a)(2) ................................................................... 17

22 U.S.C. § 4103(b) ........................................................................ 1

22 U.S.C. § 4109(a) ...................................................................... 13

22 U.S.C. § 4111(b)(2) ....................................................... 1, 2, 8, 13

**Regulations:**

5 C.F.R. § 2422.1(b) ................................................................... 2, 5-6

5 C.F.R. § 2422.30(a) ..................................................................... 9

5 C.F.R. § 2422.30(c)-(d) ............................................................... 9

5 C.F.R. § 2422.31(c) ..................................................................... 9

5 C.F.R. § 2422.31(e) ..................................................................... 9

22 C.F.R. § 1422.1(c) ..................................................................... 8

22 C.F.R. § 1422.1(d) ..................................................................... 8

**Other Authority:**

FLRA, *Representation Proceedings Case Handling Manual*
    (Aug. 2000), https://perma.cc/F7JQ-33AS .................................. 2, 3, 6

## GLOSSARY

| | |
|---|---|
| AFSA | American Foreign Service Association |
| FEA | Federal Education Association |
| FLRA | Federal Labor Relations Authority |
| FSLMRS | Federal Service Labor–Management Relations Statute |
| FSLRB | Foreign Service Labor Relations Board |
| NTEU | National Treasury Employees Union |

## INTRODUCTION AND SUMMARY

The government has previously identified multiple mechanisms through which plaintiffs could obtain administrative and judicial review of the President's exclusion determinations under 5 U.S.C. § 7103(b)(1) and 22 U.S.C. § 4103(b).  Plaintiffs could challenge the determinations in pending administrative cases, file unfair-labor-practice charges, or utilize the grievance process.  5 U.S.C. § 7111(b)(2) and 22 U.S.C. § 4111(b)(2) provide an additional avenue to obtain administrative and judicial review of plaintiffs' challenges to the executive order at issue. The availability of such review confirms that the district court lacks jurisdiction here.  That conclusion is reinforced by both *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and *American Federation of Government Employees v. Loy*, 367 F.3d 932 (D.C. Cir. 2004), which address different but overlapping questions regarding the preclusive effect of an administrative review scheme.

## ARGUMENT

**I.    SECTIONS 7111(b) AND 4111(b) PROVIDE ADDITIONAL AVENUES FOR JUDICIAL REVIEW OF THE EXECUTIVE ORDER**

### A.    Plaintiffs Can Raise Their Challenges To The Executive Order Through A Petition For Clarification

**1.**  The FSLMRS and Foreign Service Act permit "any person" to file a petition with the FLRA or FSLRB "seeking clarification of, or an amendment to, a certification then in effect or a matter relating to representation."  5 U.S.C. § 7111(b)(2); 22 U.S.C. § 4111(b)(2).  FLRA regulations reflect this language's broad scope, permitting petitions "[t]o clarify, and/or amend … [a] recognition or certification then in effect[] and/or … [a]ny other matter relating to representation."  5 C.F.R. § 2422.1(b).  FLRA guidance further explains that "[a]fter a labor organization has been recognized or certified as the exclusive representative in an appropriate unit, a petition may be filed requesting, for example: 1) clarification of the bargaining unit status of certain employees/positions."  FLRA, *Representation Proceedings Case Handling Manual* 3-1 (Aug. 2000), https://perma.cc/F7JQ-33AS (FLRA Manual).

The statutes thus permit plaintiffs to file petitions to clarify their certifications and recognitions as the exclusive representatives of employees at the affected agencies and any other matter relating to representation.  Such petitions could explain that the unions' status as the exclusive representative, and the employees' bargaining-unit status, have been called into question by an agency implementing the President's exclusion order.  The FLRA or FSLRB would be required to resolve such a petition, and in doing so, they could address the exclusion order's validity.

A clarification petition under § 7111(b)(2) or § 4111(b)(2) is not limited to appropriate-unit determinations.  Indeed, the FLRA Manual identifies "[e]xamples" of matters that can be raised in such petitions unrelated to the appropriate-unit determination: "questions relating to the majority status of the currently recognized or certified labor organization" and "amendment of the recognition or certification to conform to technical or nominal changes."  FLRA Manual 3-1.  The FLRA has thus construed the scope of potential clarification petitions broadly, avoiding firm limits on the issues that can be raised in such proceedings.

3

The FLRA has previously considered the effect and scope of § 7103(b)(1) exclusion orders in the course of resolving petitions filed under § 7111(b).  In *Department of the Navy*, 6 F.L.R.A. 498 (1981), a union filed a § 7111(b) petition seeking to represent a unit of employees. The FLRA considered the scope of an executive order that excluded from the FSLMRS's provisions Navy units operating cryptographic equipment.  *Id.* at 500.  The FLRA found that the employees in the unit the union wanted to represent were engaged in such work and thus "excluded from coverage of the [FSLMRS] pursuant to section 7103(b)." *Id.* at 501.  The FLRA dismissed the union's representation petition.  *Id.*

*Department of the Navy* involved a representation petition under § 7111(b)(1) rather than a clarification petition under § 7111(b)(2), but that is simply because employees in the relevant unit were not yet represented by a union.  Where, as here, agency subdivisions have previously recognized unions and the question is whether an exclusion determination validly excludes the subdivisions from the scope of the collective-bargaining statute, the question could be presented to the FLRA or FSLRB through a § 7111(b)(2) or § 4111(b)(2) petition for clarification rather than a § 7111(b)(1) petition for representation.  As

4

this Court stated in *American Federation of Government Employees v. Loy*, 367 F.3d 932, 936 (D.C. Cir. 2004), "[i]n investigating a § 7111 petition the FLRA necessarily must determine that the employees are entitled to engage in collective bargaining"—a determination that necessarily requires the FLRA to consider the validity of any order excluding an agency from the FSLMRS. *See also Drug Enf't Admin.*, 4 F.L.R.A. 52 (1980) (inviting parties' views on an exclusion order's "interpretation and application"); *U.S. Dep't of the Treasury*, 3 F.L.R.A. 30 (1980) (denying a representation petition because the relevant agency subdivision had been excluded from the FSLMRS by an unchallenged determination).

**2.** Plaintiffs' arguments to the contrary are unavailing. NTEU and FEA contend that a § 7111(b)(2) petition is limited to raising questions about "which labor organization, if any," a unit of employees "wishes to represent them." NTEU Suppl. Br. 3-4; *see also* FEA Suppl. Br. 3. But plaintiffs' assertion finds no basis in the statute or regulation, which make clear that a union can file a § 7111(b)(2) petition to "clarify … [a] recognition or certification then in effect[] and/or … [a]*ny other matter* relating to representation." 5 C.F.R.

§ 2422.1(b) (emphasis added).  The FLRA Manual, which NTEU relies on, further undermines plaintiffs' position because it identifies several matters that can be raised by § 7111(b)(2) petitions unrelated to which union employees wish to represent them.  For example, the manual specifies that such petitions may raise "questions relating to the continued appropriateness of an existing unit(s) due to a substantial change in the character and scope of the unit(s)."  FLRA Manual 3-1.  An existing unit may be deemed inappropriate for reasons unrelated to the employees' wishes about who should represent them—for example, due to agency restructuring.  *Cf.* 5 U.S.C. § 7112(a).

Nor does it matter that the FLRA's consideration of a clarification petition in this context would not require an election.  Some § 7111(b)(2) or § 4111(b)(2) petitions involve matters as mundane as recognizing "a change in the name of the [union]" or the "location of the agency," FLRA Manual 3-1, and such petitions certainly do not require the FLRA to hold an election.  Indeed, NTEU ultimately recognizes (NTEU Suppl. Br. 3) that a § 7111(b)(2) petition "will not always warrant an election."  AFSA's contrary suggestion (AFSA Suppl. Br. 3) is incorrect; no election

6

would be necessary where a clarification petition does not raise a question about which, if any, union should represent a bargaining unit.

NTEU and FEA also err in arguing that the FLRA lacks authority to resolve plaintiffs' challenges to an exclusion order in a § 7111(b)(2) proceeding. The FLRA has not "summarily dismissed" petitions implicating such orders, NTEU Suppl. Br. 6; rather, it has considered the scope and effect of the relevant § 7103(b)(1) determinations. *See Department of the Navy*, 6 F.L.R.A. at 500 ("[T]he Authority must determine whether, as a threshold factual matter, the executive order is applicable to the employees in question."). There is no indication that the unions in either *Department of the Navy* or *Department of the Treasury* challenged the validity of the § 7103(b)(1) determination, but if they had, the FLRA would have needed to resolve such a challenge before resolving the petitions. It is also immaterial that the FLRA's decisions that the exclusion determinations applied to the relevant agency subdivisions in those cases resulted in dismissals rather than denials; whatever the form of the FLRA's disposition, the FLRA would have to dispose of challenges to the exclusion determination before disposing of a § 7111(b) petition, and any final FLRA order would be

7

subject to judicial review.  And in any event, it would not matter if the FLRA declined to review the exclusion order's validity because a court of appeals could do so on review of the FLRA's decision.

Relying on 22 C.F.R. § 1422.1(c), AFSA contends that only agencies employing members of the Foreign Service, not unions, may file a petition to clarify a matter relating to representation under 22 U.S.C. § 4111(b)(2).  To the extent that regulation, issued in 1981, restricts unions' ability to file such petitions, it would appear inconsistent with the holding of *Eisinger v. FLRA*, 218 F.3d 1097 (9th Cir. 2000), that a similar FLRA regulatory restriction under § 7111(b)(2) conflicts with the statute, and it is unlikely that the FSLRB would enforce any such restriction.  The Foreign Service Act, like the FSLMRS, is clear that "any person" may file a petition "seeking clarification of … a matter relating to representation."  22 U.S.C. § 4111(b)(2).

In any event, AFSA ignores subsection (d) of the regulation, which clearly permits AFSA to file a § 4111(b)(2) petition to clarify the bargaining unit.  *See* 22 C.F.R. § 1422.1(d).  Such a petition might seek to clarify whether bargaining units continue to exist as previously

constituted or no longer exist due to the President's exclusion determination.  Again, the FSLRB would have to dispose of challenges to that determination's validity to resolve such a petition, and even if the FSLRB declined to second-guess the determination, its decision would trigger judicial review.

### B.    A Clarification Petition Challenging The Validity Of A Presidential Exclusion Order Would Be Subject To Administrative And Judicial Review

FLRA regulations require it to consider a clarification petition challenging the validity of the President's exclusion order.  The FLRA Regional Director "will investigate" a representation petition filed under § 7111(b).  5 C.F.R. § 2422.30(a).  In this context, where an election would be unnecessary, the Regional Director would "issue a Decision and Order," which any party may appeal to the FLRA.  *Id.* § 2422.30(c)-(d).  The FLRA would either grant review and issue its own decision, or the Regional Director's decision would become the action of the FLRA.  *Id.* § 2422.31(c), (e).  Unlike an unfair-labor-practice complaint, which must be filed by the FLRA's General Counsel, a party filing a representation petition has a right to FLRA review.  *See* 5 U.S.C. § 7111(b) ("If a petition is filed with the Authority … the Authority *shall*

9

investigate the petition …." (emphasis added)).  Plaintiffs do not disagree.  *See* NTEU Suppl. Br. 9.

The FLRA's decision on plaintiffs' potential petition would be subject to judicial review.  "Any person aggrieved by any final order of the Authority" may "institute an action for judicial review of the Authority's order" in a court of appeals, with two exceptions—"an order under[] (1) section 7122 … (involving an award by an arbitrator), unless the order involves an unfair labor practice …, or (2) section 7112 … (involving an appropriate unit determination)."  5 U.S.C. § 7123(a).  The FLRA's resolution of a representation petition under § 7111(b) can, and often does, involve an appropriate-unit determination under § 7112, precluding judicial review of the FLRA's order.  But an order resolving a § 7111(b) petition does not necessarily involve an appropriate-unit determination, and when it does not, the order is subject to judicial review.  *See Loy*, 367 F.3d at 936; *Eisinger*, 218 F.3d at 1102.

In *Eisinger*, the FLRA dismissed an employee's clarification petition because FLRA regulations permitted only an agency or labor organization to file such petitions.  218 F.3d at 1100.  On appeal, the Ninth Circuit considered its jurisdiction under § 7123, noting that

10

ordinarily a clarification-of-unit petition under § 7111(b) will result in an unreviewable appropriate-unit determination under § 7112. *Id.* at 1101-1102. But because the FLRA had dismissed the employee's petition on standing grounds, "it did not make an appropriate unit determination," and *Eisinger* was thus "an atypical case where a [clarification-of-unit] petition filed under § 7111 does not implicate § 7112." *Id.* at 1102. The Ninth Circuit thus had jurisdiction under the "plain meaning of § 7123." *Id.*

Likewise here, an FLRA decision that a union is no longer the exclusive bargaining representative based on a valid exclusion from the FSLMRS would not implicate an appropriate-unit determination under § 7112. A petition challenging the exclusion order's validity would not seek clarification of the unit's scope; rather, it would seek clarification of the unit's status. Such a petition would provide the FLRA no opportunity to apply § 7112(a)'s substantive criteria for an appropriate unit. Accordingly, the statute imposes no barrier to judicial review of such an order.

Indeed, this Court addressed a similar situation in *Loy*, where a union sought to challenge the Under Secretary of Transportation's

11

determination that airport security screeners may not collectively bargain. 367 F.3d at 934. The FLRA dismissed the union's § 7111(b) petitions seeking elections, concluding that the Under Secretary "validly barred" collective bargaining. *Id.* at 934-935. At the same time, the union filed a district-court action challenging the Under Secretary's determination. *Id.* at 934. This Court held that the district court lacked jurisdiction because "the FLRA had the exclusive authority to render judgment on the question" of the Under Secretary's authority, "subject to review only in a court of appeals pursuant to § 7123." *Id.* at 936. The Court rejected the union's argument that it could not have obtained judicial review of the FLRA's dismissal order. Although the FLRA's resolution of a § 7111(b) petition will "[s]ometimes … be made in the context of a unit determination," the FLRA there never reached the unit question, instead ruling that the Under Secretary's directive "foreclosed collective bargaining." *Id.* And the Court ruled that "no statute precludes judicial review of the union's claims in this regard." *Id.*

Here, too, a potential § 7111(b)(2) petition seeking clarification of a unit's bargaining status would be resolved based on the validity of the

12

President's § 7103(b)(1) order, and the FLRA would have no occasion to consider whether a particular bargaining unit was appropriate. Accordingly, an FLRA order dismissing or denying such a petition would be subject to judicial review.

Furthermore, there is no question that the FSLRB's resolution of a clarification petition under 22 U.S.C. § 4111(b)(2) would be subject to judicial review. The Foreign Service Act's judicial-review provision contains no carve-out for FSLRB orders involving appropriate-unit determinations. *See* 22 U.S.C. § 4109(a).

## II.  *AXON* AND *LOY* CONFIRM THAT PLAINTIFFS' CLAIMS BELONG WITHIN THE EXCLUSIVE FSLMRS REVIEW SCHEME

This Court's decision in *Loy* accords with the Supreme Court's analysis in *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), regarding the test for determining the preclusive effect of an administrative review scheme. The decisions address different questions regarding that preclusive effect. And both decisions confirm that plaintiffs' claims belong exclusively within the FSLMRS's review scheme.

**A.** In *Axon*, the Supreme Court addressed the circumstances in which "[a] special statutory review scheme … preclude[s] district courts

from exercising jurisdiction over challenges to federal agency action."
598 U.S. at 185. That question turns on "whether the particular claims
brought were 'of the type Congress intended to be reviewed within this
statutory structure.'" *Id.* at 186 (quoting *Thunder Basin Coal Co. v.
Reich*, 510 U.S. 200, 212 (1994)). The Court examined the "three
considerations designed to aid in that inquiry," but emphasized that
"[t]he ultimate question is how best to understand what Congress has
done—whether the statutory review scheme … reaches the claim in
question." *Id.*

The Court concluded in *Axon* that several Article II claims did not
fall within an administrative review scheme. 598 U.S. at 189. Those
claims challenged "the structure or very existence of an agency," not
"any specific substantive decision" made under a statutory scheme. *Id.*
The plaintiffs' alleged harms were "the 'here-and-now' injury of
subjection to an unconstitutionally structured decisionmaking process."
*Id.* at 192. Given as much, the plaintiffs would "lose their rights not to
undergo the complained-of agency proceedings if they cannot" secure
judicial review and "assert those rights until the proceedings are over."
*Id.* And the claims had "nothing to do with" matters the relevant

14

agencies "regularly adjudicate." *Id.* at 193 (alteration and quotation marks omitted).

These considerations all support the conclusion that plaintiffs' claim—that the President unlawfully invoked § 7103(b)(1)—does belong within the FSLMRS's exclusive review scheme. Plaintiffs here contest a decision made under the FSLMRS and do not challenge the FLRA's structure or existence; they are simply loath to bring their § 7103(b)(1) challenge to it. And plaintiffs' dissatisfaction that defendants are not bargaining with them while they challenge the executive order, *see* NTEU Suppl. Br. 12, bears no resemblance to the immunity-like right to be free from an unconstitutional proceeding at issue in *Axon*. *See* 598 U.S. at 192. The harms plaintiffs allege are violations of collective-bargaining provisions, which the FLRA routinely remedies. And as the government has explained (*e.g.*, Gov't NTEU Opening Br. 22-26) and *Loy* makes clear, *see supra* pp. 5, 11-12; *cf.* AFSA Suppl. Br. 11-12, the FLRA can address plaintiffs' contentions that they have been wrongly excluded from the FSLMRS's collective-bargaining regime, and thus issue orders triggering judicial review under § 7123(a).

15

**B.**  In *Loy*, this Court addressed a union's attempt to secure district-court review of its claim that an agency official had issued a directive unlawfully removing certain federal employees' collective-bargaining rights.  *See* 367 F.3d at 934.  But the union there did not raise a *Thunder Basin* challenge or argue that the FLRA would refuse to consider its claim—perhaps because the FLRA, upon the union's own petition, had actually already done so.  *See id.* at 934-935 ("The FLRA agreed that [the] … directive validly barred the screeners from engaging in collective bargaining.").[1]  Rather, this Court confronted a different argument concerning the preclusive effect of an administrative review scheme:  the union contended "it was entitled to sue in district court because" the union believed "this court could not review the FLRA's" order rejecting its claim.  *Id.* at 935.

This Court rejected that argument.  It disagreed with the union's view regarding the unavailability of judicial review from a § 7111 petition, but more fundamentally, it explained that "[a]s to the union's

---

[1] Indeed, the union did not cite *Thunder Basin* in its brief.  *See* 2004 WL 103847; *cf.* FEA Suppl. Br. 11 (criticizing *Loy* for not addressing *Thunder Basin* in its analysis regarding preclusion of statutory claims).

16

statutory claims, it is enough to point out that the district court's jurisdiction did not turn on the presence or absence of our jurisdiction." *Loy*, 367 F.3d at 935. Even if one of the FSLMRS's express judicial-review bars applied—thus precluding judicial review of an FLRA order—"that does not mean a district court" had jurisdiction over the union's statutory claims. *Id.* (citing 5 U.S.C. § 7123(a)(2)). Rather, "[i]t means that review is precluded in any court." *Id.* (citing *Association of Civilian Technicians v. FLRA*, 283 F.3d 339 (D.C. Cir. 2002)); *accord United States v. Fausto*, 484 U.S. 439 (1988). In that context, this Court explained that "[w]hat matters" is not whether judicial review is available from a particular type of administrative order, but "whether the union's claim …was 'arguably' within the FLRA's authority to decide." *Loy*, 367 F.3d at 935-936. Accordingly, given such FLRA authority to decide whether "screeners had the right to engage in collective bargaining," this Court held that the FLRA had "exclusive authority to render judgment on the question, subject to review only in a court of appeals pursuant to § 7123." *Id.* at 936.

*Loy* thus does not focus on the same preclusion issue *Axon* addresses: whether the relevant administrative review scheme

17

encompasses a challenge in the first instance. Rather, *Loy* decides the analytically distinct issue of whether the review scheme's preclusive effect evaporates where an administrative order addressing a particular claim is subject to a judicial-review bar within that scheme. Where a statutory claim is "arguably"—or "of the type," *Thunder Basin*, 510 U.S. at 212—subject to the FLRA's authority and results in an FLRA order, it does not matter if a judicial-review bar precludes Article III review; Congress's scheme is no less exclusive where Congress expressly precludes judicial review of a statutory claim. *See Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009) ("[W]hat you get under the CSRA is what you get." (quotation marks omitted)).

While *Loy* does not address the same overarching preclusion issue *Axon* explored, it does shed light on the "more granular" *Thunder Basin* considerations the Court reiterated in *Axon*. *Axon*, 598 U.S. at 189. As the government explained (*e.g.*, Gov't NTEU Opening Br. 24-25), *Loy* makes clear that plaintiffs' challenge here is not collateral to the statutory review scheme, holding that the FLRA has authority to review and decide threshold questions about employees' ability to

18

engage in collective bargaining when deciding a petition under

§ 7111(b).  *See Loy*, 367 F.3d at 936 ("In investigating a § 7111 petition

the FLRA necessarily must determine that the employees are entitled

to engage in collective bargaining.").  *Loy* further explains that such

FLRA authority is "exclusive," "subject to review only in a court of

appeals pursuant to § 7123."  *Id.*  And finally, *Loy* clarifies that

§ 7123(a)(2) does not bar judicial review of § 7111(b) petitions in

circumstances like these.  *See id.*

## CONCLUSION

The district court's preliminary injunction should be vacated.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

MELISSA N. PATTERSON
WEILI J. SHAW

*/s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
BENJAMIN T. TAKEMOTO
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*
  *joshua.m.koppel@usdoj.gov*

January 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of this Court's order of December 16, 2025, because it contains 3,497 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joshua M. Koppel*
Joshua M. Koppel